IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JEFFERY A. TEAMER,            §
                             §
            Plaintiff,       §
                             §
VS.                          §   CIVIL ACTION H-11-1808
                             §
JANET NAPOLITANO, SECRETARY  §
DEPARTMENT OF HOMELAND SECURITY,§
                             §
            Defendant.       §

**OPINION AND ORDER OF DISMISSAL**

Pending before the Court in the above referenced cause, grounded in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, [and, necessarily, in the Aviation and Transportation Security Act ("ATSA"), 49 U.S.C. § 44935(f)] and alleging employment discrimination based on race (African American), color (black), sex (male), age (43 when discharged),[1] disability (lower back problems)[2] from May 2003 until September 15,

_____

[1] Presumably under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

[2] The Rehabilitation Act of 1973, 29 U.S.C. § 791, the ADA's precursor, usually applies to federal agencies, contractors and recipients of federal assistance and provides the exclusive remedy for federal employees to disability claims. Nevertheless ATSA was passed after the terrorist attacks of September 11, 2001 and created a new federal agency, the TSA to improve airline security. Section 111(d) of ATSA, 49 U.S.C. § 44935. Section 111(d), 49 U.S.C. § 44935, provides,

Screener Personnel.--Notwithstanding any other provision

> of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal Service for such a number of individuals as the Under Secretary determines to be necessary to carry out the screening functions of the Under Secretary under [49 U.S.C. § 44901].  The Under Secretary shall establish levels of compensation and other benefits for individuals to employed.

Thus ATSA preempts application of sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794, for airport security screeners. *See, e.g., Joren v. Napolitano*, 633 F.3d 1144 (7th Cir. 2011); *Field v. Napolitano*, 663 F.3d 505, 512 (1st Cir. 2011)("Every circuit to address the issue has agreed that the language of the ATSA plainly precludes security screeners from bringing suit under certain federal employment statutes incorporated under Title 5 of the United States Code, including the Rehabilitation Act."); *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1337-38 (11th Cir. 2006)("We read the phrase 'notwithstanding any other provision of law as Congress's indiction that the statue containing that language is 'intended to take precedence of very preexisting or subsequently enacted legislation on the same subject"; "in the ATSA Congress instructed TSA to develop hiring standards for security screeners without regard to restraints the Rehabilitation Act may have imposed."). *See also Conyers v. Merit Protection Bd.*, 388 F.3d 1380, 1382 (Fed. Cir. 2004)(holding that ATSA gives the Under Secretary of Transportation for Security more flexibility over screener positions than other TSA provisions; "The language '[n]otwithstanding any other provision of law' signals that this screener-specific provision is to override more general conflicting statutory provisions to the extent they would apply to screeners."); *Jones v. United States*, 88 Fed. Cl. 789, 792 (Ct. Cl 2009)("Section 111(d) is not ambiguous because Congress' intent to override conflicting provisions of law is made clear through the plaint meaning of 'notwithstanding. . . .  Section 111(d) must be interpreted as precluding application of any other conflicting provisions of law.'"); *Daniels v. Chertoff*, No. CV 06-2891-PHX-JAT, 2007 WL 1140401, *5 (D. Ariz. Apr. 17, 2007)("[T]he ATSA preempts the Rehabilitation Act and the TSA is not required to provide accommodations to employees who are not capable of meeting the specific physical qualifications and employment standards promulgated pursuant to the ATSA."), *citing Pino v. Hawley*, 480 F. Supp. 2d 818, 2007 WL 936738, *5-6 (W.D. Pa. Mar. 26, 2007)(holding that ATSA's preemptive provisions "evidence Congress's intent to give the TSA *carte blanche* with regard to all

2004, when *pro se* Plaintiff Jeffery Teamer was terminated from his position as a Transportation Security Screener with the Transportation Security Administration ("TSA"), and hostile work environment, are (1) a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (instrument #7) and (2) a request to grant motion to dismiss as unopposed under Local Rule 7.4 (#8), both filed by Defendant Janet Napolitano, Secretary, Department of Homeland Security.   Plaintiff has not filed a response to either motion.

### Plaintiff's Allegations

To help clarify Plaintiff's complaint and to provide some organization, the Court footnotes Defendant's responses to the

---

of its employment decisions regarding security screeners, including the termination of an existing employee who is deemed no longer qualified to perform his screening job due to his lack of daily fitness for duty."); *American Fed'n of Gov't Emps. v. Hawley*, 481 F. Supp. 2d 72, 83 (D.D.C. 2006)("The 'plain meaning' of ATSA Sections 111(d) and 101 shows that Congress intended to invest the TSA Under Secretary with authority to exempt security screeners from the employee protections of otherwise applicable federal personnel laws."); *Howery v. Chertoff*, Civ. A. No. H-08-196, 2009 WL 890400, *7 (S.D. Tex. Mar. 27, 2009)("Based on the 'sweeping breadth' of section 111(d) . . . courts have declined to consider claims that TSA employment decisions violate federal statutes or common law."), *citing Springs v. Stone*, 362 F. Supp. 2d 686, 697, 698 (E.D. Va. 2005)("The breadth of the clause [section 111(d)] cannot be overstated.   Not only did Congress exempt the Under Secretary from specific employment constraints with respect to airport security screeners contained in the ATSA itself, it took the further step of relieving him from the constraints of '*any* other provision of law.'").

allegations and references the evidence that the Secretary has submitted to support her contentions.[3]

As best as the Court can understand Plaintiff's complaint, Plaintiff claims that before May 2004 he had no Absences Without Leave ("AWOLs") or attendance issues other than for his unavoidable accident and illness.  All AWOLs prior to May 2004 were converted to Leave Without Pay ("LWOP") or Sick Leave in accordance with the TSA's Leave Policy.

Plaintiff alleges that on February 11, 2004 he was involved in a traffic accident that resulted in a permanent back injury that resulted in his light duty work restriction, continuing until he was discharged on September 15, 2004.[4]

Plaintiff claims he was absent due to illness (a "blackout day") on May 28, 2004 and on June 18, 2004.  He was also absent from work from June 24-July 2, 2004, caring for a family member with a serious health condition.  He states that on June 18, 2004 he gave advance notice to Defendant for leave to care for that family member and that he called in every day that he was out.  He claims that he was not informed of his FMLA rights and that Defendant did let him exercise his FMLA rights to care for that

_____

[3] *See, infra,* discussion under Standards of Review.

[4] Plaintiff states in his Petition for Discrimination and Wrongful Termination (attached to #1, p. 7, ¶ 5.2), "Lifting and handling large and over-size bags was now difficult to impossible, as well as standing or sitting for long extended periods of time. Often times coughing was painful."

-4-

individual even after he submitted "the medical document" from his
father's physician to cover his absence during the June 24-July 2,
2004 period.  On July 11, 2004  Screening Manager Andrea Baldwin
("Baldwin") refused to sign and approve Plaintiff's Leave Request.
Plaintiff claims that on July 16, 2004 he submitted a medical
document from his doctor, but Defendant initially refused to retain
or acknowledge it, once before July 11th and then again on July 11,
2004, for the blackout day on May 28, 2004.[5]  He concedes that the
medical document was not signed (by the doctor) and was submitted
for verification to get the AWOL for May 28, 2004 removed.  On June
18, 2004 Baldwin purportedly forced Plaintiff's supervisor, Mark
Fry ("Fry"), to write Plaintiff up for calling in sick.  Fry wrote
"verbal" on the Personnel Report, but Baldwin made him redraft it
and remove the word "verbal."

---

[5] Defendant responds that on July 16, 2004 Plaintiff submitted
an unsigned note from his attending physician, Dr. Kimberly
Henderson, dated June 4, 2004, requesting Defendant to excuse
Plaintiff from work for medical reasons from June 20, 2004-July 2,
2004.  #7, Ex. 1.  Because there was no signature, TSA requested
verification of the note from Dr. Henderson.  #7, Ex. 2.  Dr.
Henderson's response stated that the note was based on a telephone
message from Plaintiff on June 3, 2004 and was intended to excuse
him from work from May 27-28, 2004 (not the June 20-July 2 period);
she attached a copy of the original unsigned note that was given to
Plaintiff and a copy of the original signed note that he was given
with the correct (May 27-28) dates.  #7, Ex 3.  On August 24, 2004
Dr. Henderson sent another fax stating that Plaintiff left a phone
message requesting a signature on the letter he had submitted on
July 16, 2004.  She further stated that she would not sign the
altered letter delivered to Defendant by Plaintiff and that
Plaintiff was no longer under her care.  #7, Ex. 4.

On June 18, 2004 Baldwin denied Teamer a promotion to Lead TSS after a disagreement.  On September 10, 2004, after Plaintiff met with Federal Security Director James Marchand ("Marchand"), Plaintiff was again denied a promotion to Lead TSS.

Plaintiff claims that on July 21, 2004 Defendant denied Plaintiff access to his personnel file at Human Resources as well as Plaintiff's request to file a grievance against Baldwin.  On July 23, 2004, after he visited with Human Resources representative Linda Reddin, Human Resources sent out a memo alerting Supervisors about Plaintiff's visit and his next scheduled appointment on July 29, 2004.  Also on July 23, Plaintiff was not permitted to file a grievance against Baldwin.  He asserts that his grievance was not recorded, acknowledged or addressed by Defendant.  Also that same day he learned that Defendant had placed five Personnel Reports in his disciplinary file without his knowledge.  Two, dated 05/30/03 and 06/20/02, were over a year old; the others were dated 06/18/04, 05/28/04, and 07/08/04.  On July 23, 2004, as proof that he had submitted the doctor's excuse note to Baldwin, because he did not trust Baldwin Plaintiff asked that a copy of the medical document that had been provided to Baldwin on July 26, 2004 be placed in his personnel file, but Human Resources denied the request.

On August 3, 2004 at a Town Hall Meeting, Plaintiff asked Marchand about favoritism and bias practices among Supervisors and Managers.  Marchand responded that he would get back to Plaintiff,

-6-

but Marchand never did.   Sometime later that month, Plaintiff was not allowed to work in an assigned light duty work location, but was "illegally transferred" to one of the busiest terminals (Terminal C) at Bush International Airport.

On September 3, 2004 Plaintiff was issued a Notice of Proposed Removal.[6]  On September 8, 2004, Plaintiff tried to tell Marchand about the actions and conduct of Baldwin and other staff toward Plaintiff, but Marchand would not consider Plaintiff's grievance. Marchand  indicated that the decision concerning Plaintiff's removal would be made by September 18, 2004.  On September 14, 2004 Plaintiff filed a grievance asserting discrimination and harassment against Defendant with the Equal Employment Opportunity Commission ("EEOC") for TSA.[7]   On September 15, 2004 Marchand terminated

_____

[6] #7, Ex. 5 (referencing absences on May 28, June 18, July 8, July 29, and August 2, 2004, all of which were separately documented in Personnel Reports, Ex. 7).  Defendant states that TSA issued this Notice and ultimately removed him on September 15, 2004 (Notice of Decision on Proposed Removal, Ex. 6) because of his repeated absences without leave, failure to follow procedures to request leave, and falsification of the June 4, 2004 note from Dr. Henderson.   In the Notice of Decision on the Proposed Removal, Marchand stated that as an employee of TSA, Plaintiff was "expected to meet high standards of conduct" and that Plaintiff's "AWOL and failure to follow procedures is unacceptable."   Ex. 6, last paragraph of p. 1.

[7] Defendant states that on September 14, 2004 Plaintiff initiated contact with TSA's Office of Civil Rights and complained of discrimination based on race, sex, age, and disability beginning on July 16, 2004 through his discharge on September 15, 2004.  EEO Counselor's Initial Interview, #7, Ex. 6.  A mediation was held on November 13, 2004.  #7, Ex. 8, p. 3.  Because the mediation did not produce an agreement, on January 4, 2005 Plaintiff mailed a formal complaint of discriminatory wrongful termination based on race,

Plaintiff's employment.  He filed an EEOC charge on January 4, 2005.  On February 8, 2011 he received a Notice of Right to Sue.

Plaintiff further asserts that at some time between Plaintiff's separation from TSA and before the EEO investigation, his attendance records and Time Labor Reports were altered to support Defendant's claims.  His Personnel Reports were drafted by Defendant and withheld from Plaintiff and did not accurately reflect the reason for Plaintiff's absences or tardiness, but mainly supported Defendant's claims.

Plaintiff claims that out of 80 employees terminated as of September 4, 2004, 35 were black (43.8%), and 14 white (17.5%).  Of 1,011 employees working for the Department of Homeland Security and the George Bush Intercontinental Airport, 418 were black (41.3%), 417 white (41.2%), 111 Hispanic (11.0%), and 65 who were Asian,

---

color, sex, age and disability. #7, Ex. 9.  By letter dated March 10, 2005, TSA accepted his claim that he was discharged from his position on or about September 3, 2004 based on race, color, age, sex, and disability. #7, Ex. 10.  On April 15, 2010, TSA's Office of Civil Rights issued a Final Agency Decision finding no discrimination and crediting Marchand's legitimate, nondiscriminatory reasons for terminating Plaintiff as set forth in his Decision on Proposed Removal (#7, Ex. 6) and in his testimony, "one thing in particular TSA cannot tolerate is dishonesty.  The falsified medical document submitted was . . . the straw that broke the camel's back.  We cannot employ an employee who has by his action(s) demonstrated a lack of honesty or integrity." April 15, 2010 Final Agency Decision to the EEOC, #7, Ex. 11.  Plaintiff appealed the Final Agency Decision to the EEOC, which On September 30, 2010 affirmed the Final Agency's Decision's finding of no discrimination.  Plaintiff requested reconsideration, which was denied by the EEOC on February 3, 2011.  #7, Ex. 1, pp. 8-11. Plaintiff filed this suit 95 days later, on May 9, 2011, the last day covered by the five-day presumed receipt period.

American Indian, or other (6.5%).   Out of 114 TSA employees at Bush Intercontinental Airport who had entries of AWOL status during the first seven days of June, July, August and September 2004, 72 were black (63.2%) and 32 were white (28.1%).

Furthermore Plaintiff represents that 460 employees were over forty years old (45.5%) and 551 were under forty (54.5%).   Out of 114 TSA employees, 77 were over forty years old (68%).   He claims he was affected by both race and age categories.

The Court is not sure of the source of all these statistics. Moreover they fail to relate to Plaintiff's disparate treatment claims of employment discrimination.

As for his sex discrimination claim, Plaintiff states that according to the TSA Administrative Office and the U.S. Department of Homeland Security Transportation Security Administration, a female cited for falsification of medical documentation on 05/25/04 was suspended for three days (10/19-10/21/04), yet the Director stated that according to TSA policy, Plaintiff's submission of a falsified doctor's note was sufficient grounds, by itself, for termination from TSA.

Plaintiff asserts that disability discrimination was evidenced by the transfer of Plaintiff, who was on light duty work restrictions, to workstation C-155 in the Terminal C baggage handling area despite the fact that Defendant was aware of Plaintiff's disability and the light work restriction.   He

complains that Defendant insisted no changes should be made to accommodate Plaintiff's needs. Defendant ceased recording Plaintiff's attendance on or around 08/19/04. Plaintiff claims that after the transfer, he suffered from severe abdominal pains for hours and passed out. Plaintiff believes that Defendant's bad faith intent was to use Plaintiff's disability, deny approval of leave, deny the filing of a grievance and deny FMLA leave to justify Plaintiff's termination.

<strong>Standard of Review</strong>

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, 2011 WL 3363872, *1 (5th Cir. 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3). If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, " the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, *quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). The reasons behind this practice are to preclude courts from issuing advisory opinions and barring courts without

jurisdiction "'from prematurely dismissing a case with prejudice.'". *Id.*, *citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming*, 281 F.3d at 161.

A federal employee must exhaust his administrative remedies when bringing suit under Title VII in federal court. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-33 (1976); *Pacheco v. Mineta*, 448 F.3d 783, 788 and n.7 (5th Cir. 2006).[8] Furthermore exhaustion of administrative remedies is a prerequisite to federal subject matter jurisdiction in a Title VII case. *Tolbert v. U.S.*, 916 F.2d 245, 247 (5th Cir. 1990); *Fitzgerald v. Sec'y. U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997); *Farve v. Potter*, 342 Fed. Appx. 3, 4 (5th Cir. July 1, 2009), *citing Randel v. U.S. Dep't. of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998). See subsequent discussion *infra*.

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof that the court has subject matter jurisdiction in responses to a 12(b)(1) motion. *Ramming*, 281 F.3d at 161. In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts

---

[8] Under 42 U.S.C. § 2000e-16(c), the proper defendant to a Title VII civil action against the federal government is the head of the relevant department or agency, Here Janet Napolitano, Secretary, Department of Homeland Security

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000).  A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3*, citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, as is the case here, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).  A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other

admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson*, 2008 WL 4692392 at *10, *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[9] has significant authority

---

[9] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

> It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court—not the jury—to decide, whether they hinge on legal or factual determinations. *Id.* To determine whether jurisdiction exists, the court

"'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his

_____

will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).  The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31, 2008). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"  *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b).  *Iqbal*, 129 S. Ct. at 1949.  The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

The Fifth Circuit applies the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) to disparate treatment employment discrimination claims under Title VII where the evidence is circumstantial.  Nevertheless, that "framework is an evidentiary standard, not a rigid pleading requirement." *Puente v. Ridge*, 324 Fed. Appx. 423, 427 (5th Cir. May 12, 2009), *citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506-07 (2002)(at Rule 12(b)(6) stage, a plaintiff does not have to plead all elements of a prima facie case

of discrimination under *McDonnell Douglas*,[10] but needs only to present a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief"). For purposes of stating a claim under Rule 12(b)(6), a plaintiff does not have to plead a *prima facie* case of discrimination. *Id., citing id.* and *Johnson v. Johnson*, 385 F.3d 503, 531 (5th Cir. 2004). Nevertheless a court may consider the *McDonnell Douglas* framework, and the plaintiff must "'allege facts sufficient to state all elements of [his] claim.'" *Id., citing Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 370 (5th Cir. 2008), *quoting Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006)(*Swierkiewicz* "left untouched the burden of a plaintiff to allege facts sufficient to state all elements of [his] claim."). To be "similarly situated" to the plaintiff in a disparate treatment case, the circumstances for other employees must be "nearly identical." *Berquist v. Washington Mutual Bank*, 500 F.3d 344, 353 (5th Cir. 2007), *cert. denied*, 552 U.S. 1166 (2008).

---

[10] A prima facie case of discrimination under Title VII requires a plaintiff to show that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was subjected to an adverse employment action, and (4) he was treated less favorably because of his membership in the protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). An "adverse employment action consists of *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).

Under the ADEA, 29 U.S.C. § 623(a)(1), it is against the law "for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." To prevail in a disparate treatment action based on age in a circumstantial evidence case, the plaintiff bears the burden of persuasion to show that age was the "but-for" cause of the employer's adverse action. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). The Fifth Circuit applies the *McDonnell Douglas* framework to ADEA claims. *Id.* For a *prima facie* case of age discrimination a plaintiff must show (1) that he was discharged, (2) that he was qualified for the position, (3) that he was within the protected class (over forty years of age) when he was discharged, and (4) that he was either (i) replaced by someone younger or that (ii) he was otherwise discharged because of his age. *Id.* A plaintiff does not have to plead a *prima facie* case to survive a Rule 12(b)(6) motion to dismiss, but he must plead facts that would plausibly suggest that his employer decided to take the adverse action because of his age. *Oinonen v. TRX, Inc.*, Civ. A. No. 3:09-CV-1450-M, 2010 WL 2217870, *1 (N.D. Tex. June 1, 2010), *citing Swierkiewicz*, 534 U.S. at 511-12, and *Puente*, 324 Fed. Appx. at 427.

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s),[11] as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").  Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. Jan. 25, 2011).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a defendant attacks the complaint because it

---

[11] The Court finds that the documents attached to Plaintiff's pleadings and to Defendant's motion to dismiss fit within this category.

fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

The district court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(reciting the long-established rule that documents filed pro se are to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Nevertheless, "[e]ven a liberally construed pro se civil rights complaint . . . must set forth facts giving rise to a claim on which relief can be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, (5th Cir. 2002)("However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel,

'conclusory allegations or legal conclusions masquerading as factual conclusion will not suffice to prevent a motion to dismiss."), *citing inter alia Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

### Exhaustion of Administrative Remedies

To exhaust administrative remedies under Title VII against the United States, "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If counseling does not resolve the grievance, within thirty days of the date the employee contacted the Counselor, the Counselor shall notify the employee that he has a right to file a formal discrimination complaint with his employing agency. 29 C.F.R. § 1614.108(e). The employee may file a civil action in federal court if "(a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed; (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken; (c) Within 90 days of receipt of the Commission's final decision on an appeal; or (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission." 29 C.F.R. § 1614.407. An employee's failure to timely notify an EEO counselor or file a claim bars a

complaint filed in federal court unless Plaintiff shows that the
Courts should apply waiver, estoppel or equitable tolling. *Howery*,
2009 WL 890400, at *5. The Fifth Circuit has recognized three
grounds for equitable tolling of the deadline for contacting an EEO
Counselor: "'(1) the pendency of a suit between the same parties
in the wrong forum; (2) the plaintiff's lack of awareness of the
facts supporting his claim because of the defendant's intentional
concealment of them; and (3) the EEOC's misleading the plaintiff
about his rights.'" *Howery*, 2009 WL 890400, at *5, *quoting Manning
v. Chevron Chem. Co., LLC,* 332 F.3d 874, 880 (5th Cir. 2003).
Plaintiffs' allegations do not support equitable tolling in this
action.

For claims of age discrimination under the ADEA, the claimant
"may either 'invoke the EEOC's administrative process and then file
a civil action in federal district court if he is not satisfied
with his administrative remedies,' or he may 'present the merits of
his claim to a federal court in the first instance.'" *Howery*, 2009
WL 890400, at *6, *quoting Stevens v. Department of the Treasury,*
500 U.S. 1, 5-6 (1991)(citing to 29 U.S.C. § 633(a)(b)-(d)). If he
follows the first option and pursues his ADEA claim through the
EEOC's administrative process, he must exhaust his administrative
remedies before he files suit in federal court. *Id., citing White
v. Frank*, 895 F.2d 243 (5th Cir. 1990). If he pursues the second
option, the ADEA mandates that "'no civil action may be commenced

by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action.  Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.'" *Id., citing* 29 U.S.C. § 633a(d).

### Pending Motions

### Defendant's Request to Grant Motion to Dismiss as Unopposed Under Local Rule 7.4 (#8)

Local Rule 7.4 states, "Failure to respond [to a motion] will be taken as a representation of no opposition."  Even if a plaintiff fails to file a response to a motion to dismiss despite a local rule's mandate that a failure to respond constitutes a representation of nonopposition, the Fifth Circuit has rejected the automatic granting of dispositive motions without responses without the court's considering the substance of the motion.  *Watson v. United States*, 285 Fed. Appx. 140, 143 (5th Cir. 2008), *citing Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006), and *Johnson v. Louisiana*, 757 F.2d 698, 708-09 (5th Cir. 1985).  "The mere failure to respond to a motion is not sufficient to justify a dismissal with prejudice."  *Id.*  Therefore the Court denies the request and examines the substance of the motion to dismiss.

### Defendant's Motion to Dismiss under Rules 12(b)(1) and (6) (#7)

Defendant states that Plaintiff was discharged for absence without leave, failure to follow procedures to request leave, and falsification of medical documentation.

Defendant argues that the Court lacks subject matter jurisdiction over all alleged acts of discrimination except for Plaintiff's termination because he failed to administratively exhaust them.  Regarding Plaintiff's termination claim, insists Defendant, Plaintiff fails to state a claim upon which relief can be granted because his conclusory allegations are insufficient to state a claim for disparate treatment and because the ATSA bars his disability discrimination claim.

As indicated by the Court in footnote 2, the ATSA, in particular Section 111(d), 49 U.S.C. § 44935, precludes disability discrimination claims under the Rehabilitation Act, including failure to accommodate. *Daniels v. Chertoff*, No. CV 06-2891-PHX-JAT, 2007 WL 1140401, *5 (D. Ariz. Apr. 17, 2007)("[T]he ATSA preempts the Rehabilitation Act and the TSA is not required to provide accommodations to employees who are not capable of meeting the specific physical qualifications and employment standards promulgated pursuant to the ATSA."), *citing Pino v. Hawley*, 480 F. Supp. 2d 818, 2007 WL 936738, *5-6 (W.D. Pa. Mar. 26, 2007)(holding that ATSA's preemptive provisions "evidence Congress's intent to give the TSA *carte blanche* with regard to all of its employment decisions regarding security screeners, including the termination

of an existing employee who is deemed no longer qualified to perform his screening job due to his lack of daily fitness for duty."). Under 49 U.S.C. § 44935(f)(1)(B)(iv), a screener "shall possess basic aptitudes and physical abilities, including . . . physical coordination, and motor skills, to the following standards: . . . (iv) Screeners performing physical searches or other related operations shall be able to efficiently and thoroughly manipulate and handle such baggage, containers, and other objects subject to security processing."  Thus Plaintiff's claims of discrimination based on physical disability and failure to accommodate him with light work restrictions are preempted.

Regarding failure to exhaust administrative remedies, Defendant notes that Plaintiff was required to contact an EEO Counselor within forty-five days of any claimed act of discrimination.  29 C.F.R. § 1614.105(a)(1).  Plaintiff initiated contact with TSA's Office of Civil Rights on September 14, 2004. Ex. 8.  Therefore any claims arising more than forty-five days earlier, or prior to July 31, 2004, are barred.  The Court agrees.

Furthermore Defendant argues that in Plaintiff's formal complaint of discrimination filed on January 4, 2005, the only basis for a discrimination claim was his allegation of unlawful termination (based on race, color, age, and sex) since a disability cause of action is precluded by the ATSA.  Moreover, where Plaintiff brings a disparate treatment action, he must allege facts

-25-

showing a "similarly situated" employee who is not a member of the same protected class and who was treated more favorably. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). Defendant maintains that Plaintiff has failed to do so.   In his three complaints (Employment Discrimination Complaint, #1, pp. 1-4; his Original Complaint, #1, pp. 5-7; and his Petition Discrimination and Wrongful Termination, #1-1) the only reference to a similarly situated employee to "a female cited for falsification of medical documentation on 5/25/2004 [who] was suspended for 3 days." Petition, #1-1, ¶ 5.5.  Defendant contends that this allegation fails because Plaintiff does not allege that this female employee was "similarly situated," i.e., that she was also cited for absence without leave and for failure to follow procedures to request leave.   The TSA's Final Agency Decision states that Plaintiff "had significant attendance problems throughout [his] employment as a TSO, including failing to report for [his] assigned shift, failing to call in when [he was] going to be late, tardiness, and Absence without Leave (AWOL)." Ex. 11, p. 1.  Thus even if the court accepts Plaintiff's allegation about the female, it does not allege sufficient facts to state a claim for disparate treatment because, given his attendance problems, Plaintiff is not similarly situated to the female employee. *See, e.g., Hill v. Napolitano*, No. H-10-3147, 2011 WL 1337606, * (S.D. Tex. Apr. 7, 2011)(dismissing complaint under Rule 12(b)(6) and

finding that "Hill has not identified any similarly situated African American employee who was treated more favorably than she was for sleeping on the job—she has not identified any African-American employee who denied sleeping on the job and further accused supervisory personnel of fabricating the charge. Hill cannot, therefore, establish a *prima facie* case of race discrimination."). The Court agrees. This Court further notes that even this woman is not adequately identified.

Even more basic to the inadequacy of Plaintiff's pleadings, this Court further finds that Plaintiff's allegations of wrongful discharge, and possibly denial of promotion, based on his race (African American), color (black), sex (male), and age (43 when discharged) are barebones conclusions, a "[t]hreadbare recital" without any facts provided to indicate why he believes that his termination was based on any of these factors. Such pleading cannot survive a Rule 12(b)(6) motion.

As noted, Plaintiff has failed to respond to Defendant's motion to dismiss, nor has he requested leave to amend.

Accordingly, for the reasons stated above, the Court

ORDERS that Defendant's request to grant motion to dismiss as unopposed under Local Rule 7.3 (#8) is DENIED. The Court further

ORDERS that Defendant's motion to dismiss all claims except his termination based on failure to administratively exhaust them under Rule 12(b)(1) is GRANTED without prejudice, and his motion to

-27-

dismiss the discriminatory discharge claims for failure to state a claim upon which relief may be GRANTED under Rule 12(b)(6) is GRANTED without prejudice.

    **SIGNED** at Houston, Texas, this _1st_ day of _May_, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE